IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEORGE L. BROWN,

                                            OPINION AND ORDER

                  Petitioner,

                                  19-cv-1010-bbc

        v.

CATHY A. JESS,

                  Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner George L. Brown, appearing by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a 2015 judgment of conviction for first-degree reckless injury on the ground that the state trial court failed to properly instruct the jury regarding the "castle-doctrine" version of Wisconsin's self-defense instruction. The petition is briefed and ready for decision. For the reasons that follow, I conclude that petitioner has failed to show that he is in custody in violation of the Constitution or federal law. Accordingly, his petition will be denied.

BACKGROUND

The following facts are drawn from the petition and state court records provided by petitioner and the state.

In Dane County case number 2014CF1393, petitioner George Brown was charged with attempted first-degree intentional homicide and first-degree reckless injury, both with a deadly weapon, following a physical altercation in which petitioner stabbed the victim in the head.  The underlying facts accused petitioner of stabbing his second cousin during a barbeque at petitioner's home.  (The victim survived, but he will likely require lifelong support because he has numerous cognitive and physical impairments.)  Petitioner alleged that he acted in self defense, and he pleaded not guilty to the charges and proceeded to a jury trial.

The testimony at trial established that during a barbeque at petitioner's house, an argument between petitioner and the victim escalated into a scuffle in petitioner's garage.  Friends intervened to separate the two men.  The victim's wife and a friend walked the victim to his car, which was parked on the street in front of petitioner's house, but the argument continued.  Petitioner and the victim took off their shirts and started to throw things at each other.  The victim took off his shoes and threw them at petitioner.  Petitioner threw the victim's shoes back at him, and then proceeded to throw scrap wood from the top of the driveway toward the victim.

What happened next was the central dispute at trial.  The state's theory at trial was that, while the victim's wife was trying to get the victim into his car, petitioner retrieved a knife from his house, ran down the driveway and attacked the victim in the street.  The victim's wife testified that the victim collapsed at the end of the driveway after petitioner stabbed him in the head with a knife.  Dkt. #5-10 at 91.

2

Petitioner's version of events was different.  Petitioner testified that after he threw sticks toward the victim, the victim picked up two of the sticks and came up petitioner's driveway toward petitioner.  Petitioner was afraid that the victim would attack him with the sticks, so he picked up a knife from the grill outside the garage.  The victim raised his hands with the wood to strike petitioner and petitioner swung his knife at the victim.  The victim then walked back down the driveway toward his car and collapsed.  Petitioner testified that he was not aware until later that he had stabbed the victim.

Petitioner's trial counsel requested that the jury be read the "castle-doctrine" version of Wisconsin's self-defense instruction, which forbids the jury from considering a defendant's opportunity to retreat into the defendant's home when assessing the reasonableness of the defendant's use of force in self-defense.  Dkt. #5-5 at 5-6.  The court concluded that petitioner was entitled to a self-defense instruction, but not the castle-doctrine instruction, because that instruction "was not intended to apply in the situation of a drunken family barbeque."  Dkt. #5-13 at 134-35.  The court also found that there was no evidence that the victim was attempting to forcibly enter petitioner's dwelling at the time petitioner stabbed the victim.  The court read to the jury the standard self-defense instruction on "retreat," which allowed the jury to consider whether the defendant had the opportunity to retreat safely, whether such retreat was feasible, and whether the defendant knew of the opportunity to retreat.  Dkt. #5-14 at 18-19.  During closing arguments, the prosecutor argued that even if the jury believed petitioner's

version of the events, petitioner had had a "feasible" way of avoiding any confrontation by running into his house.  Id. at 96-97.

The jury found petitioner guilty of first-degree reckless injury with a deadly weapon, but acquitted him on the charge of attempted first-degree intentional homicide. Id. at 115-16.  The court sentenced petitioner to 12 years of imprisonment to be followed by 15 years of extended supervision.

Petitioner filed a post-conviction motion for a new trial.  He argued that the court erred by refusing to read the modified retreat language in the castle-doctrine instruction. Dkt. #5-5.  The court denied the motion after an evidentiary hearing, holding that it did not err because petitioner had not produced sufficient evidence to warrant the castle-doctrine instruction.  The court also concluded that even if it had erred, the error was harmless because petitioner's testimony that he was not the aggressor was "incredible." Id. at 6.  Petitioner filed a motion for reconsideration, which was also denied.  He then appealed.

The state conceded on appeal that petitioner had produced sufficient evidence to warrant the castle-doctrine version of the self-defense instruction, based on petitioner's testimony that the victim had come onto his driveway brandishing two pieces of wood. Dkt. #5-5 at 6.  The Wisconsin Court of Appeals agreed, but it upheld the conviction anyway because it found the error to be harmless.  The court concluded that the jury would have found petitioner guilty of first-degree reckless injury even if the jury had been given the option of the castle-doctrine instruction, because no reasonable jury would have

believed petitioner's version of events.  Id. at 7.  Petitioner petitioned the Wisconsin Supreme Court for review, arguing that the failure to read the correct self-defense instruction violated petitioner's due process rights and that the court of appeals's harmless error analysis violated petitioner's Sixth Amendment right to a jury trial.  Dkt. #5-6 at 14-20.  The state supreme court denied the petition for review.  Dkt. #5-8.

OPINION

Petitioner contends that he is entitled to habeas relief because the trial court violated his right to due process by refusing to read the castle-doctrine version of Wisconsin's self-defense instruction. Petitioner argues that if the court had read the correct self-defense instruction, the jury would have been precluded from considering his ability to retreat into his home, and it is likely that the jury would have acquitted hima of first-degree reckless injury.

The state makes several arguments in opposition.  It argues first that petitioner's due process claim is defaulted because he failed to present it to the state courts.  Second, the state argues that an error in a state-law self-defense jury instruction cannot support a constitutional due process claim.  Third, the state argues that even if petitioner has shown a due process violation, the constitutional error was harmless.

A federal court may grant habeas relief following an adjudication on the merits in state court only if that decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1)–(2); <u>Czech v. Melvin</u>, 904 F.3d 570, 573 (7th Cir. 2018).  The Wisconsin Court of Appeals issued the last reasoned decision on the merits of petitioner's claim, so its analysis deserves deference so long as that analysis is reasonable.  <u>Gage v. Richardson</u>, 978 F.3d 522, 529 (7th Cir. 2020).

## A.  <u>Procedural Default</u>

The state's first argument is that petitioner failed to present his due process claim to the state courts and therefore has procedurally defaulted the claim.

To properly raise any issue on habeas review, a petitioner must have "fairly presented" the issue through one complete round of state court review.  <u>Richardson v. Lemke</u>, 745 F.3d 258, 268 (7th Cir. 2014).  In this instance, it is undisputed that petitioner argued in the state courts that the jury should have been instructed regarding Wisconsin's castle-doctrine.  However, the state argues that petitioner did not present his jury instruction argument to the state courts as a federal due process claim; instead, petitioner presented only his argument that he was entitled to the castle-doctrine instruction under state law.

A federal habeas court cannot correct errors of state law.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991); <u>Arnold v. Dittmann</u>, 901 F.3d 830, 835 (7th Cir. 2018).  Thus, to preserve the issue for federal habeas review, petitioner was required to present his jury

instruction argument to the state courts as a federal constitutional claim.  Perruquet v. Briley, 390 F.3d 505, 512 (7th Cir. 2004).  This means that petitioner must have "sufficiently alerted" the state court "to the federal constitutional nature of the issue." Whatley v. Zatecky, 833 F.3d 762, 771 (7th Cir. 2016).  The Court of Appeals for the Seventh Circuit has identified four factors to consider in determining whether a petitioner has fairly presented a constitutional claim in state court and avoided default: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; or (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.  Id.  A single factor alone does not automatically avoid default, but all four factors need not be present to avoid default.  Id.  Rather, the court must consider the specific circumstances of each case. Id.

In this instance, petitioner fairly presented his due process claim to the state courts.  In his appeal to the Wisconsin Court of Appeals, he argued that the trial court's failure to properly instruct the jury "violates the federal due process right not to be convicted 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the [charged] crime.'" Dkt. #5-2 at 19.  To support his argument, petitioner cited In re Winship, 397 U.S. 358, 364 (1970), in which the Supreme Court held that the due process clause "protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Petitioner cited the <u>Winship</u> decision in his petition for review to the Wisconsin Supreme Court also. Dkt. #5-6 at 14. In the Wisconsin Court of Appeals, petitioner also cited <u>Sanders v. Cotton</u>, 398 F.3d 572, 582 (7th Cir. 2005), a habeas case in which the Court of Appeals for the Seventh Circuit held that a court's failure to instruct the jury on every element of the charged offense violates due process. He also cited Wisconsin state cases recognizing that the failure to correctly instruct the jury on the state's definition of criminal conduct may violate the defendant's federal constitutional rights. <u>State v. Stietz</u>, 895 N.W.2d 796, 801 (2017); <u>State v. Harvey</u>, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189. These are the same cases that petitioner now cites in support of his habeas petition.

The state argues that petitioner focused on state law in his state court briefs. That is true, but that is because petitioner had to persuade the state courts that he was entitled to the jury instruction under state law. Now that the state law issue is settled, petitioner's sole claim is whether the failure to give the castle-doctrine instruction violated his federal due process rights. It is clear that by citing the federal cases above, petitioner was attempting to raise this constitutional due process challenge in state court. By discussing due process and providing citations to cases that would have "alerted the court to the alleged federal nature of the claim," he fairly presented his federal constitutional claim to the Wisconsin state courts. <u>Sanders</u>, 398 F.3d at 580–81

(petitioner fairly presented federal due process claim regarding jury instructions by citing due process and citing a federal case).

Because I conclude that petitioner fairly presented his due process claim to the Wisconsin state courts, I will turn to the merits of his due process claim.


B.  Due Process

Petitioner contends that the trial court's refusal to instruct the jury regarding the castle-doctrine violated his due process rights.  The Wisconsin Court of Appeals assumed that petitioner was entitled to the castle-doctrine instruction under state law, but the court did not determine whether the trial court's failure to give the instruction violated plaintiff's due process rights.  Because the court of appeals did not resolve this issue on the merits, I consider the question de novo.  28 U.S.C. § 2254(d).

Petitioner faces a heavy burden of showing that a jury instruction error amounts to a constitutional violation.  It is rare that a jury instruction error will support habeas relief. Waddington v. Sarausad, 555 U.S. 179, 190 (2009); Czech, 904 F.3d at 574.  Errors in jury instructions warrant habeas corpus relief only in "extraordinary circumstances," where the error so infected the entire trial as to deprive the petitioner of fundamental fairness.  Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Estelle, 502 U.S. at 72.  A jury instruction violates due process if it subverts the presumption of innocence or relieves the state of its burden to prove every element of a crime beyond a reasonable doubt. Winship, 397 U.S. at 364.  This is because due process requires the state to prove

beyond a reasonable doubt every fact necessary to constitute the crime with which a defendant is charged.  Id. at 368.  See also Carella v. California, 491 U.S. 263, 266 (1989) (instructions imposing mandatory presumptions violated due process because they relieved state of burden to prove every element of crime beyond a reasonable doubt); Sullivan v. Louisiana, 508 U.S. 275, 278 (1993) (constitutionally-deficient reasonable doubt instruction violated due process); Charlton v. Davis, 439 F.3d 369, 372 (7th Cir. 2006) ("[E]rroneous instructions on the elements of an offense or the State's burden to prove guilt beyond a reasonable doubt are a violation of a defendant's due process right under the Fourteenth Amendment").  A jury instruction might also be unconstitutional if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  Boyde v. California, 494 US 370, 380 (1990).

But it is rare that a jury instruction containing only an error of state law, such as the one at issue in this case, would support federal habeas relief.  Estelle, 502 U.S. at 71–72 (fact that "instruction was allegedly incorrect under state law is not a basis for habeas relief"); Gilmore v. Taylor, 508 U.S. 333, 342 (1993) (generally, "instructions that [only] contain errors of state law may not form the basis for federal habeas relief."); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); Keahey v. Marquis, 978 F.3d 474, 478 (6th Cir. 2020) (misstatement of state law in jury instruction does not support habeas relief).  To show that a state-law instruction error violated the constitution, a petitioner must show

that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 71–72. "[T]he instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id.

Petitioner argues that his case is a rare case in which the jury instruction error amounted to a due process violation, because the error relieved the state of its burden to prove each element of first-degree reckless injury by proof beyond a reasonable doubt. To understand petitioner's argument, it is necessary to review the elements of first-degree reckless injury and Wisconsin's self-defense privilege. In Wisconsin, first-degree reckless injury requires the state to prove:

   (1) the defendant caused great bodily harm to a human being;

   (2) by criminally reckless conduct; and

   (3) under circumstances which show utter disregard for human life.

Conduct is "criminally reckless" when "the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." Wis. Stat. § 939.24.

Wisconsin's self-defense privilege can negate the "criminal recklessness" element of the reckless injury offense. The self-defense privilege allows an actor to "intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate . . . what the actor reasonably believes to be an unlawful interference with his or her person by" another person. Wis. Stat. § 939.48(1). A defendant's lawful

11

exercise of self-defense is not "criminal recklessness."  Because self-defense negates an element of the offense, the state has the burden to disprove the defense beyond a reasonable doubt once the defendant has raised the defense.  State v. Austin, 2013 WI App 96, ¶ 12, 349 Wis. 2d 744, 752–53, 836 N.W.2d 833, 837.

In this instance, the trial court instructed the jury about the self-defense privilege, and it also instructed the jury that it was the state's burden to disprove self-defense. However, the trial court rejected petitioner's request for the castle-doctrine instruction, which would have instructed the jury that it could not consider whether petitioner had an opportunity to flee or retreat if petitioner used force in self-defense while being attacked in his dwelling (or driveway).  Instead, the court instructed the jury that it could consider petitioner's opportunity to retreat when assessing whether the amount of force used by petitioner was reasonable.  Dkt. #5-14 at 22-24.

Both sides agree that the trial court should have read the castle-doctrine instruction.  Petitioner argues that because the trial court did not provide the castle-doctrine instruction, the instructions failed to properly identify the prosecution's burden of proving the absence of reasonableness in order to convict him of reckless injury.  He argues that because the court did not instruct the jury properly, the jury could have convicted him of reckless injury without finding that the state proved each element of the crime beyond a reasonable doubt.  Petitioner argues that the error is equivalent to a court's failing to provide an instruction on an element of an offense.  He cites Sanders, 398 F.3d at 581-82, and Cole v. Young, 817 F.2d 412, 413 (7th Cir. 1987), cases in

12

which the court of appeals concluded that the failure to properly instruct the jury on an element of the offense violated due process.  He also cites <u>Carella</u>, 491 U.S. at 266, and <u>Sullivan</u>, 508 U.S. at 278, in which the Supreme Court held that erroneous instructions regarding reasonable doubt and the state's burden violated due process.

Petitioner's case is distinguishable from the cases on which he relies.  In contrast to <u>Carella</u> and <u>Sullivan</u>, the jury at petitioner's trial was instructed properly regarding the state's burden of proof and reasonable doubt.  In contrast to <u>Sanders</u> and <u>Cole</u>, the jury was instructed properly regarding the elements of the charged offense.  The jury was instructed regarding all of the elements of first-degree reckless injury.  And the state was required to prove all the elements of reckless injury, as required by <u>Winship</u>.  Petitioner has not shown that either the castle-doctrine, or self-defense are generally "elements" of first-degree reckless injury.  Even though the state has the burden to disprove self-defense, petitioner cites no authority suggesting that a state-law affirmative or negative defense should be treated as an "element" of the crime for purposes of due process.  <u>Engle v. Isaac</u>, 456 U.S. 107, 120 (1982) ("A State may want to assume the burden of disproving an affirmative defense without also designating absence of the defense an element of the crime.").

Ultimately, petitioner's claim is not a constitutional one.  He contends that the state court failed to give an instruction about a state-law defense.  But due process does not protect against errors of state law and it does not guarantee that a criminal defendant be permitted to present evidence regarding all possible state-law defenses.  <u>Gilmore</u>, 508

U.S. at 343 (due process does not guarantee that jury will "consider evidence that relate[s] to an affirmative defense").  Accordingly, I conclude that petitioner has failed to show a due process violation.  Moreover, as discussed below, even if the jury instruction error was a constitutional problem, the error was harmless.

### C.  Harmless Error

The Wisconsin Court of Appeals concluded that the trial court's failure to provide the castle-doctrine instruction was harmless error.  Dkt. #5-5 at 7.  In evaluating whether the error was harmless, the court of appeals applied the standard from Chapman v. California, 386 U.S. 18 (1967), which was the correct standard for evaluating harmless error on direct appeal.  Fry v. Pliler, 551 U.S. 112, 121–22 (2007).  Under Chapman, an error is harmless if it is "clear beyond a reasonable doubt" that a rational jury would still have convicted petitioner absent the error.  Id.

Petitioner contends that he is entitled to habeas relief because the court of appeals's application of Chapman was unreasonable.  He argues that the court of appeals made improper credibility determinations, weighed evidence, and speculated about matters such as a blood splatter that would require expert testimony.  But petitioner cannot obtain habeas relief solely by showing that the court of appeals applied Chapman unreasonably.  In a collateral habeas proceeding, federal courts must apply the harmless error test from Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), regardless whether the state court applied the Chapman harmless error test.  Davis v. Ayala, 576 U.S. 257,

268–70 (2015) (explaining the <u>Brecht</u> standard subsumes § 2254(d)'s deference requirements when a federal habeas petitioner challenges the state court's <u>Chapman</u> finding); <u>Jones v. Basinger</u>, 635 F.3d 1030, 1052 (7th Cir. 2011) (same).

Under <u>Brecht</u>, 507 U.S. at 637, a federal habeas petitioner is entitled to habeas relief based on trial error only if the error resulted in "actual prejudice."  This means that petitioner is entitled to relief only if the court has "grave doubt about whether a trial error of federal law had a substantial and injurious effect or influence in determining the jury's verdict."  <u>Richardson v. Griffin</u>, 866 F.3d 836, 844–45 (7th Cir. 2017) (citing <u>Brecht</u>, 507 U.S. at 637).  This requires "more than a reasonable possibility that the error was harmful."  <u>Id.</u>  In evaluating whether an error was harmless, federal courts must review the entire record, asking "whether a properly instructed jury would have arrived at the same verdict, absent the error."  <u>Armfield v. Nicklaus</u>, 985 F.3d 536 (7th Cir. 2021); <u>Czech</u>, 904 F.3d at 577.  The court looks the case's overall strength, and not just the evidence in the state's favor.  <u>Id.</u>

I conclude that the trial court's failure to give the castle-doctrine instruction in this case was harmless error.  First, it is helpful to consider the jury instructions that were, and were not, provided in this case.  The jury was instructed that a person commits the offense of reckless injury if the individual "recklessly causes great bodily harm to another human being under circumstances that show utter disregard for human life."  Dkt. #5-14 at 20.  The court also instructed the jury regarding self-defense, and instructed that "the defendant may intentionally use force [in self-defense] which is likely to cause death or

15

great bodily harm only if the defendant reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself." Id. at 21. The jury was instructed that when considering self-defense, it should consider defendant's role in provoking the attack. Id. at 22. If defendant engaged in conduct likely to provoke attack, and did provoke attack, the self-defense privilege prohibited him from using force in self-defense unless he reasonably believed that he was in "imminent danger of death or great bodily harm," and "he reasonably believe[d] he exhausted every other reasonable means to escape from or otherwise avoid death or great bodily harm." Id. at 23. The court also instructed the jury that it could consider whether defendant had the opportunity to retreat in determining whether he was entitled to the self-defense privilege. Id. at 22.

Petitioner seems to assume that, if the castle-doctrine instruction had been given, the jury would have been precluded from considering the feasibility of retreat or whether he provoked an attack by the victim. Wis. Stat. § 939.48. Petitioner is incorrect. Only if the jury accepted petitioner's castle-doctrine argument would the jury be precluded from considering petitioner's opportunity to retreat. In other words, the castle-doctrine would apply only if the jury believed petitioner that the victim attacked petitioner as the victim forcibly entered petitioner's driveway. But the jury would not have been obligated to accept petitioner's self-defense argument. The jury could have still rejected petitioner's version of events and could have rejected petitioner's testimony that he had a reasonable fear of imminent harm. The jury could have found that petitioner charged the victim in

the street, out of anger.  The jury could have found that petitioner provoked the victim.
Thus, even if the castle-doctrine instruction had been provided, the jury could have
considered petitioner's opportunity to retreat.

In light of the detailed, consistent evidence from independent witnesses about
petitioner's actions, I am not persuaded that the jury would have accepted petitioner's
castle-doctrine argument or that the outcome of trial would have been different had the
castle-doctrine instruction been given.   The evidence presented at trial, including
petitioner's own testimony, showed that petitioner acted aggressively and out of anger,
and not in self defense.

Several witnesses, including petitioner, agreed that after the initial fight in the
garage ended, the victim was persuaded to walk to his car.  Dkt. #5-10 at 75; Dkt. #5-12
at 181; Dkt. #5-13 at 66-67.  Petitioner and the victim continued to yell and argue, but
the physical fighting stopped.   Dkt. #5-12 at 187-88.   At that point, according to
petitioner's own testimony, petitioner was standing near his garage, while the victim was
standing several dozen feet away from petitioner's property, in a cul-de-sac.  Dkt. #5-13
at 97-101.  Petitioner testified that he was afraid of the victim, id. at 70, but there was no
testimony or other evidence suggesting that the victim presented an imminent risk of
harm to petitioner after the victim had retreated and was standing in the street.   The
victim did not display a weapon.  If he had threatened petitioner from the street, or if
petitioner had been afraid of being harmed, petitioner could have gone into his house or

garage, but he did not.  Instead, petitioner proceeded to throw a bottle of lighter fluid and more than 20 pieces of wood at the victim and the victim's wife.  Id. at 70-71.

Petitioner was the only witness to testify that the victim charged up the driveway and attacked him.  The other two eyewitnesses to the fight–the victim's wife and a young neighbor boy–stated that petitioner attacked the victim at the bottom of the driveway. Petitioner argues that the testimony from another neighbor, Cynthia Harms, corroborated his version of events.  But Harms did not see the beginning of the fight, and her testimony was inconsistent about what she did see.  Dkt. #5-13 at 26-32.  Harms's testimony does nothing to help petitioner establish that the victim ran up petitioner's driveway and attacked petitioner, which is what he would have had to persuade a jury to believe if his castle-doctrine defense were to succeed.

The physical evidence showed that the victim was stabbed three times: in the shoulder; in the arm; and in the head.  There was no blood on petitioner's driveway, but there was a large pool of blood at the bottom of the driveway, near the street.  Petitioner argues that it would take expert witness testimony to explain the significance, if any, of the blood evidence.  But his argument is not persuasive.  At trial, the prosecution argued without objection that there likely would have been blood on the driveway had the fight occurred near the top of the driveway, as petitioner alleged. Dkt. #5-14 at 43.  Petitioner has cited no legal authority suggesting that the prosecution's argument was improper or should have been precluded.  A jury could infer that if the fight had happened where

petitioner alleged it did, there would have been at least some trace of blood on the driveway from one of the victim's three stab wounds.

Finally, the testimony of petitioner and other witnesses about petitioner's behavior after stabbing the victim are evidence that petitioner acted out of anger and with disregard to the victim's life, and not in self-defense.  Petitioner admitted at trial that after he stabbed the victim, he continued to yell angrily and make threats to the victim and the victim's wife.  Id. at 75.  Petitioner did not call 911 or make any other attempt to help the victim.  Multiple other witnesses testified to petitioner's angry shouts.  There was evidence that petitioner yelled, "He's not dead yet!" and "I will kill him!"  There was also evidence that after the incident, in conversations with others, petitioner described the confrontation as a "fight" that happened because the victim was "pulling shit," "push[ing] his buttons," "talking all crazy and acting all stupid," calling him names, "asking for it" and making petitioner angry.  Id. at 110-15.  Petitioner described his anger again at trial, testifying that the victim had started the fight and forced petitioner to act. Id. at 75-76.

In light of this evidence, the jury would not have accepted defendant's castle-doctrine argument.  Therefore, I cannot conclude that the trial court's refusal to read the castle-doctrine instruction had, or reasonably may have had, a substantial influence on the jury's decision.  The jury instruction error was harmless.

D.   <u>Certificate of Appealability</u>

The only remaining question is whether to grant petitioner a certificate of appealability.  Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.   To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  <u>Miller El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Petitioner is entitled to a certificate of appealability on his claim that the trial court's failure to instruct the jury regarding the castle-doctrine violated his due process rights.  The law governing that claim is complex, and reasonable jurists might have resolved the claim differently.


ORDER

IT IS ORDERED that

1.  Petitioner George L. Brown's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2.  Petitioner is GRANTED a certificate of appealability.

Entered this 22d day of February, 2021.

                                    BY THE COURT:
                                    /s/


                                    _____
                                    BARBARA B. CRABB
                                    District Judge